**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

DURIE TANGRI LLP
RAGESH K. TANGRI (SBN 159477)
rtangri@durietangri.com
CLEMENT S. ROBERTS (SBN 209203)
croberts@durietangri.com
LAUREN E. KAPSKY (*pro hac vice* pending)
lkapsky@durietangri.com
TIMOTHY HORGAN-KOBELSKI (*pro hac vice* pending)
tkobelski@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Plaintiff
COLLATERAL ANALYTICS LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLATERAL ANALYTICS LLC,<br><br>                       Plaintiff,<br><br>        v.<br><br>NATIONSTAR MORTGAGE LLC, XOME SETTLEMENT SERVICES, LLC, and QUANTARIUM, LLC,<br><br>                       Defendants. | Case No.  3:18-cv-19<br><br>**COMPLAINT FOR TRADE SECRET MISAPPROPRIATION IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 ET SEQ. AND CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.; BREACH OF CONTRACT; FALSE ADVERTISING UNDER THE LANHAM ACT, 18 U.S.C. § 1125(A) AND CALIFORNIA BUSINESS CODE § 17500 ET SEQ.; AND FOR VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 ET SEQ., AND CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACTION, CAL. PENAL CODE § 502**<br><br>**DEMAND FOR JURY TRIAL** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  Plaintiff, COLLATERAL ANALYTICS LLC ("Collateral Analytics"), by way of its Complaint

2  against Defendants, alleges as follows:

3  **PRELIMINARY STATEMENT**

4  Collateral Analytics is one of the foremost developers of automated valuation models ("AVMs")

5  and data-analytics software for residential real estate in the United States.  Collateral Analytics' software

6  is used by banks, brokerage agencies, government-sponsored enterprises, and others to obtain highly

7  accurate information about the past, present, and future value of residential real-estate properties in

8  connection with all aspects of the domestic residential real-estate market.  Indeed, due to its long

9  experience and expertise in the field, Collateral Analytics has, by far, the most accurate valuation tools

10  and analytics products—with the broadest geographic coverage—of any such tools or products in the

11  marketplace.

12  Defendants Nationstar Mortgage LLC ("Nationstar") and Xome Settlement Services, LLC

13  ("Xome") have been Collateral Analytics' customers since 2013, and have used Collateral Analytics'

14  software and services as an essential component of their activities in the residential real-estate market.

15  Nationstar and Xome apparently didn't like paying for the Collateral Analytics products and services

16  they were using.  But, because there are no other products on the market with comparable accuracy,

17  coverage, and functionality, they were unwilling to switch suppliers.  And, because it literally takes

18  decades of research and refinement (not to mention many millions of dollars) to make a product with the

19  accuracy, coverage, and functionality that Collateral Analytics displays, Defendants were unable to

20  develop their own.  Their solution?  To take Collateral Analytics' technology, confidential information,

21  and trade secrets, and *give* them to a subsidiary they acquired for that purpose, Defendant Quantarium,

22  LLC ("Quantarium").  Nationstar and Xome then directed Quantarium's engineers to replicate Collateral

23  Analytics' products.  Defendants have used those knock-offs to replace Collateral Analytics.  And

24  Quantarium will soon offer them to third-party customers.  Collateral Analytics brings this Complaint to

25  put a stop to this practice, to shut down the ongoing theft of its intellectual property, and to recover the

26  money it has lost as a result of the Defendants' activities.

27  **THE PARTIES**

28  1.      Plaintiff Collateral Analytics is a Hawaii-based limited liability company ("LLC") with its

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  principal place of business at 6700 Kalanianaole Highway, Suite 210, Honolulu, Hawaii 96825.

2  Plaintiff's LLC members are all individuals who are each domiciled in either Hawaii, Pennsylvania,

3  Missouri, or California.

4  　2.　Defendant Nationstar Mortgage LLC, doing business as Mr. Cooper ("Nationstar"), is a

5  Delaware limited liability company with its principal place of business at 8950 Cypress Waters

6  Boulevard, Coppell, Texas 75019.   Nationstar is wholly owned by Nationstar Sub1 LLC and Nationstar

7  Sub2 LLC, which are both Delaware limited liability companies.  Nationstar Sub1 LLC and Nationstar

8  Sub2 LLC are each wholly owned by Nationstar Mortgage Holdings, Inc.  Nationstar Mortgage

9  Holdings, Inc. is a publicly traded company, registered as a corporation in Delaware, with its principal

10  place of business at 8950 Cypress Waters Boulevard, Coppell, Texas 75019.

11  　3.　Defendant Xome Settlement Services, LLC ("Xome") is a Pennsylvania limited liability

12  company with its principal place of business at 8950 Cypress Waters Boulevard, Coppell, Texas 75019.

13  Xome's sole member is Xome Holdings LLC, a Delaware limited liability company.  Xome Holdings

14  LLC is a wholly owned subsidiary of Defendant Nationstar.

15  　4.　Defendant Quantarium, LLC ("Quantarium") is a Washington limited liability company

16  with its principal place of business in Seattle, Washington.  Quantarium is the wholly owned subsidiary

17  of Xome Holdings LLC, a Delaware limited liability company.  Xome Holdings LLC is a wholly owned

18  subsidiary of Defendant Nationstar.

19  **JURISDICTION AND VENUE**

20  　5.　The conduct of Defendants Nationstar, Xome, and Quantarium described in this

21  Complaint constitutes misappropriation of Collateral Analytics' trade secrets under the Defend Trade

22  Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, under Count I, and violation of the Computer Fraud and

23  Abuse Act ("CFAA"), 18 U.S.C. § 1030, under Count X.  Quantarium's conduct also constitutes false

24  advertising under the Lanham Act, 15 U.S.C. § 1125, under Count VIII.  This Court thus has original

25  jurisdiction over the subject matter of Collateral Analytics' DTSA, CFAA, and Lanham Act claims

26  against all Defendants under 28 U.S.C. § 1331.

27  　6.　The conduct of Defendants Nationstar, Xome, and Quantarium delineated here also

28  constitutes violations of the California Uniform Trade Secrets Act ("CUTSA"), Cal Civ. Code § 3426 *et*

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

*seq.*, under Count II, and the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, under Count XI.  Quantarium's conduct also constitutes false advertising under California Business and Professions Code § 17500.  The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.  In the alternative, this Court has diversity jurisdiction over Collateral Analytics' claims against all Defendants pursuant to 28 U.S.C. § 1332 because Collateral Analytics is completely diverse from all Defendants and its claims against them amount to more than $75,000.

7.      Defendants Nationstar and Xome's conduct breaches the express terms of at least four contracts these Defendants entered into with Collateral Analytics under Counts III-VI, over which the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  In the alternative, this Court has diversity jurisdiction over Collateral Analytics' contractual claims against these Defendants pursuant to 28 U.S.C. § 1332 because Collateral Analytics is completely diverse from Nationstar and Xome and its claims against them amount to more than $75,000.

8.      Defendant Quantarium's conduct interferes directly with at least two contracts that Defendants Nationstar and Xome each entered into with Collateral Analytics under Count VII, over which the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  In the alternative, this Court has diversity jurisdiction over Collateral Analytics' interference claim against Quantarium pursuant to 28 U.S.C. § 1332 because Collateral Analytics is completely diverse from Quantarium and its claims against it amount to more than $75,000.

9.      The Court has personal jurisdiction over Defendants Nationstar, Xome, and Quantarium because each of these Defendants consents to this Court's jurisdiction, pursuant to an agreement dated September 15, 2017.

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this lawsuit, as well as substantial injury to Plaintiff, have occurred or will occur in interstate commerce, in the State of California, and in the Northern District of California.  The parties have also consented to venue in this Judicial District in an agreement dated September 15, 2017.

**INTRADISTRICT ASSIGNMENT**

11.      Pursuant to Local Rule 3-2(c), this is an Intellectual Property Action to be assigned on a

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

district-wide basis.

## BACKGROUND

12.     Collateral Analytics is a leader in data analysis and valuation of the United States residential real-estate market.  The company is one of the nation's foremost developers of automated valuation tools for residential properties, as well as associated data analytics products and reports.

13.     Collateral Analytics' founders have been working to develop real-estate valuation models and tools since at least 1985.  Collateral Analytics' engineers have spent decades developing software and the relationships needed to: (*a*) collect, organize, and obtain the rights to use real-estate data from the diverse and fractured sources needed for broad geographic coverage; (*b*) apply rigorous mathematical modeling in order to generate reliable home-price valuations for past, present, and future time periods; and (*c*) develop value-added features and ways of interacting with valuation data that enables appraisers, brokers, and other end users to perform their tasks quickly, efficiently, and accurately.  All of these problems are difficult to solve, and Collateral Analytics' success in solving them is largely responsible for its position in the market.

14.     The first problem—access to reliable data covering the entire country—is a result of the fact that most listing and sale data for a given parcel of real estate is privately owned, accessible only through regional networks of brokers called multiple listing services ("MLS").  MLS data includes a wide range of information on a home and corresponding parcel, such as the living area's square footage, bedrooms, bathrooms, listing prices, and land area.  It is difficult to obtain both (1) access to and (2) permission to use the data, but Collateral Analytics has developed contacts and strategies that have allowed it to obtain legal access and usage rights to MLS data that covers more than 90% of residential properties in the United States.  As a result, Collateral Analytics has access to the most complete, and best, data for residential real-estate valuation in the country.

15.     The second problem—analyzing the data to yield precise home price estimates—is a mathematical exercise which can only be solved with significant experience with and access to the data.  Put differently, while it is not difficult to build *a* statistical model to value houses, to make that model reliably ***accurate*** requires both extensive knowledge (including what approaches do not work) and extensive data (so that you can rigorously test the models you create).  Working over ***decades,*** Collateral

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Analytics built, from scratch, what is unarguably the most accurate and robust real-estate valuation model in the world.  And, until the thefts described herein, no one else came close.

16.     The third problem—developing a work flow and feature set that allows end users to make effective use of the platform's data and analytics—also requires a long investment in research and development.  Brokers and other end-users have limited insight into the tools and options that will speed up their work and make them more accurate.  Absent the kind of misappropriation at issue in this complaint, it would require working with hundreds of customers over many years to fully develop and refine a marketable set of data analytics and valuation features.

17.     Collateral Analytics uses its analytics tools to, among other things, speed up the production and increase the accuracy of appraisals and broker price opinions ("BPOs").  Home appraisals are a required component in many residential real-estate transactions.  They are almost always required in purchase and sale transactions, and are commonly used in refinancing and loan servicing.  Standard appraisals include descriptions of the interior and exterior of the home, neighborhood, market conditions, and nearby comparable sales, which the appraiser analyzes as part of the valuation process.  A standard appraisal costs several hundred dollars and typically involves 6-8 hours to complete.  As part of a standard appraisal, the appraiser visits the subject property and conducts a physical inspection, though now appraisers may conduct "desktop appraisals," which do not require the appraiser to physically visit the property.  A BPO is another valuation report, often used by financial institutions that need to maintain updated valuations for the mortgage portfolio, but do not want or need the expense and delay associated with an appraisal.  A traditional BPO costs $50 to $150, takes up to 4 hours to complete, and can vary widely in accuracy depending on the broker and her knowledge of the local market conditions.

18.     Collateral Analytics' proprietary platform allows a user to enter a residential address located nearly anywhere in the United States and obtain a virtually instantaneous and fully automated BPO or desktop appraisal.  Its platform allows users to prepare more accurate appraisals and BPOs in a small fraction of the time they would otherwise spend.  In addition, Collateral Analytics' algorithms simultaneously analyze the quality of these results and the underlying data, allowing for highly accurate confidence intervals, systematic review, quality checks, and more.

19.     Collateral Analytics considers its models, processes, algorithms, workflow, negative

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

knowledge, and data selection to be trade secrets.  Collateral Analytics' trade secrets derive independent economic value from not being generally known to the public or to persons who can obtain economic value from their use.  In particular, Collateral Analytics' trade secrets provide a competitive advantage in the marketplace by enabling: (***a***) greater geographic coverage; (***b***) more accurate results; (***c***) a more interactive and useful experience for end users; and (***d***) a more economical, efficient solution for property valuations.  If competitors knew Collateral Analytics' trade secrets, they could use them to make products that would close the gap in accuracy and functionality between Collateral Analytics and the rest of the market.

20.     Because its trade secrets are critical to its business, Collateral Analytics takes extensive measures to protect them (and other important business information).  Among other things, Collateral Analytics requires all potential customers to enter into non-disclosure agreements before it: (***a***) allows them to access Collateral Analytics' products; (***b***) agrees to provide demonstrations of the products; or (***c***) provides detailed information about product functionality.  Thus, for example, in connection with ***every*** sale, Collateral Analytics enters into written licensing agreements with its customers, which limit both the use and permissible disclosure of Collateral Analytics' confidential information.  Indeed, both Nationstar and Xome signed agreements with broad confidentiality definitions and tight restrictions on what could be done with Collateral Analytics' confidential information.

**DEFENDANTS NATIONSTAR AND XOME**

21.     Defendants Nationstar and Xome are both subsidiaries of the same publicly traded company, Nationstar Mortgage Holdings, Inc.  Defendant Nationstar is one of the biggest mortgage loan servicers in the United States.  It also originates mortgages, and holds title to Real Estate Owned ("REO") properties, which are properties lenders own after they foreclose on a mortgaged property but fail to sell it at auction.

22.     Defendant Xome acts as an appraisal management company for Nationstar.  As an appraisal management company, Xome provides valuation services for residential properties, working with brokers, appraisers, and vendors like Collateral Analytics to maintain up-to-date valuations of the properties that Nationstar (and its portfolio companies) own or against which they lend money.

23.     █████████████████████████████████████

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



COMPLAINT / CASE NO.  18-19

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

30.

31.

32.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



**DEFENDANTS NATIONSTAR, XOME, AND QUANTARIUM'S BAD ACTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

38.     But while Collateral Analytics was working to delight its customer, Nationstar and Xome were secretly plotting to use what they learned from Collateral Analytics to copy Collateral Analytics' industry-leading tools—all while deceiving Collateral Analytics both about that copying and the fact that they intended to replace Collateral Analytics with the copied products.

39.     As a first step in its plan, Xome's parent company, Xome Holdings, acquired a small software company called Quantarium based in Seattle, Washington.  At the time of that acquisition (in May 2015), Quantarium was primarily a developer of title management software, which helps parties to a real-estate transaction track each other's progress.  Quantarium was not generally known in the mortgage-servicing and appraisal-management industries, or considered a viable valuation solution, and it had only a small handful of engineers.

40.     At the time Xome acquired it, the most that could be said of Quantarium's capabilities is that _____ As of May 2015, Quantarium had no access to MLS data, and thus no rights to "permissible purpose" use of such data. _____ AVMetrics, one of the leading independent testers of AVMs in the real-estate valuation industry, which provides anonymized results of a given AVM's accuracy stacked against other companies that also provide their AVMs to AVMetrics.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  ███████████████ much less the kind of market-leading products in Collateral Analytics'

2  portfolio.  Indeed, ███████████████████████████████

3  ██████████████████████████████

4       41.     After its acquisition, in just over one year, █████████████

5  ████████████████████████████████████

6    42.  ███████████████████████████████

7  ████████████████████████████████

8  ████████████████████████████████

9  ████████████████████████████████

10  ████████████████

11

12

13

14

15

16

17

18

19

20

21

22

23  43.  

24  ████████████████████████████████

25  ████████████████████████████████

26  ███████████████

27  44.  ████████████████████████████

28



**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



45.     Collateral Analytics first learned of Quantarium through Xome's public announcement of the acquisition in May 2015.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



48.



50.     Quantarium received the confirmation it needed to copy Collateral Analytics' products from Nationstar and Xome, which provided Quantarium direct access to Collateral Analytics' confidential and proprietary information.

51.

52.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

***Quantarium Copies Collateral Analytics' Quality Control Tools***

55.    At the top of Quantarium's list of targets was copying Collateral Analytics' Risk Profiler product.  Collateral Analytics' Risk Profiler is a powerful quality-control tool that assesses the risk level of a specific BPO, standard appraisal, or desktop appraisal.

56.    Risk Profiler analyzes the quality of a BPO or appraisal (regardless of whether the BPO or appraisal was done through Collateral Analytics' products) by examining the broker, agent, or appraiser's final value that she assigned to the house, her selected data sources, the comparable properties the she selected, and her market-condition evaluation, among a host of other inputs used in authoring the opinion.  Risk Profiler also analyzes the BPO or appraisal by asking a series of "high risk," "medium risk," and "low risk" questions related to the inputs used by the author, and presents the answers to the user.  If Risk Profiler answers "yes" to high-risk or enough medium-risk questions, then the BPO or appraisal is flagged for further quality-control review for Collateral Analytics' customer.

57.

58.    In addition, through the Risk Profiler report, Collateral Analytics enables users to access its Neighborhood Value Range (referred to as "NVR") and Interactive AVM (referred to as "iAVM") products.  These products act as quality-control tools, allowing the user to run, in real time, the subject property of the BPO or appraisal through Collateral Analytics' data-analysis tools to generate Collateral Analytics' automated valuation of the property and comparable properties.  These tools allow the user to compare the agent's BPO or appraisal against one generated by Collateral Analytics, including a comparison of the data sources selected, market analyses, and comparable properties used.

59.



**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



60.

61.

62.

63.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

67.

68.

69.

*Defendants' Misappropriation of Collateral Analytics' Product Suite*

70.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



71.

72.    Nationstar and Xome continually passed on Collateral Analytics' confidential information, including but not limited to trade secrets related to comparable analysis, automated grid adjustments, and market condition analysis (to name a few), in order to ensure Quantarium's success in copying Collateral Analytics' iBPO product.

73.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



74.

75.

76.     In fact, Quantarium—no longer satisfied with selling its knock-offs to its affiliates—recently announced that it will start licensing its knock-off iBPO product to third-party customers (other than Nationstar and Xome).  Collateral Analytics is now faced with its worst nightmare: Quantarium created products using information it stole from Collateral Analytics **not only** to steal two of Collateral Analytics' major clients, **but also** to compete directly with Collateral Analytics in the marketplace.

77.

78.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



*Quantarium Replaces Collateral Analytics*

80.     Quantarium has engaged in widespread copying of Collateral Analytics' products and trade secrets using information and access that Collateral Analytics provided to Nationstar and Xome under the protection of ▮▮▮▮▮▮▮▮▮

81.     Collateral Analytics relied on Nationstar and Xome's repeated assurances that Quantarium was incapable of and would not be used to replace Collateral Analytics, on the express promises and contractual commitments in the parties' agreements, and on a belief that a large, publicly traded company like Nationstar would have *some* respect for the law.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



84.     Defendants' misappropriation of Collateral Analytics' confidential information and trade secrets continued into 2017, and includes trade secrets underpinning Collateral Analytics' iBPO, Risk Profiler, and AVM-related appraisal products.

85.

86.

87.

88.

89.

90.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



91.

92. In sum, Defendants repeatedly breached multiple contracts with Collateral Analytics, misappropriated Collateral Analytics' confidential information—including but not limited to its trade secrets—circumvented the technological controls on Collateral Analytics' software platforms, and committed numerous other bad acts.

//

//

//

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**FIRST COUNT**
**(Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, Against All Defendants)**

93.     Plaintiff incorporates by reference Paragraphs 1 through 92 as though fully set forth herein.

94.     Plaintiff's data-licensing information, models, processes, algorithms, workflow, negative knowledge, feature set, and data selection constitute trade secrets used in interstate commerce within the meaning of 18 U.S.C. § 1836.  Plaintiff took reasonable steps to protect the secrecy of its trade secrets, including but not limited to entering into confidentiality agreements and limiting access to its proprietary information.  Plaintiff's trade secrets derived economic value from not being readily ascertainable by proper means to others that could obtain economic value from the disclosure and use of Plaintiff's trade secrets.

95.     Defendants have misappropriated Collateral Analytics' trade secrets in violation of 18 U.S.C. § 1836.

96.     Defendants' misappropriation was not accidental or inadvertent and instead has been willful and malicious under 18 U.S.C. § 1836.

97.     Defendants continue to misuse Collateral Analytics' trade secrets, and continue to enjoy the benefits of their prior misuse, and will continue to do so unless enjoined by the Court.

98.     By reason of the foregoing misappropriation of Plaintiff's trade secrets, Defendants have been unjustly enriched at Plaintiff's expense, and Plaintiff has suffered damage and continues to suffer damage.

99.     Plaintiff has been damaged as a result of Defendants' conduct in an amount to be proved at trial.

**SECOND COUNT**
**(Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act, California Civil Code § 3426 *et seq.*, Against All Defendants)**

100.     Plaintiff incorporates by reference Paragraphs 1 through 99 as though fully set forth herein.

101.     Plaintiff's data-licensing information, models, processes, algorithms, workflow, negative

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

knowledge, feature set and data selection constitute trade secrets within the meaning of California Civil Code § 3426.1(d).  Plaintiff took reasonable steps to protect the secrecy of its trade secrets, including but not limited to entering into confidentiality agreements and limiting access to its proprietary information.  Plaintiff's trade secrets derived economic value from not being readily ascertainable by proper means to others that could obtain economic value from the disclosure and use of Plaintiff's trade secrets.

102.     Defendants have misappropriated Collateral Analytics' trade secrets in violation of California Civil Code § 3426.

103.     Defendants' misappropriation was not accidental or inadvertent and instead has been willful and malicious under California Civil Code § 3426.4.

104.     Defendants continue to misuse Collateral Analytics' trade secrets, and continue to enjoy the benefits of their prior misuse, and will continue to do so unless enjoined by the Court.

105.     By reason of the foregoing misappropriation of Plaintiff's trade secrets, Defendants have been unjustly enriched at Plaintiff's expense, and Plaintiff has suffered damage and continues to suffer damage.

106.     Plaintiff has been damaged as a result of Defendants' conduct in an amount to be proved at trial.

**THIRD COUNT**
**(Breach of Contract Against Nationstar)**

107.     Plaintiff incorporates by reference Paragraphs 1 through 106 as though fully set forth herein.

108.     [REDACTED]

109.     Nationstar breached [REDACTED] by misappropriating, disclosing, sharing, and/or using Plaintiff's confidential information and trade secrets, including but not limited to revealing Plaintiff's confidential information and/or trade secrets to Quantarium without Plaintiff's consent, in violation of [REDACTED]

110.     Nationstar's conduct in breaching the [REDACTED] was willful, intentional, a

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

violation of law and/or fraudulent and falls within the scope of Cal. Civ. Code § 1668.

111.    Plaintiff has performed all of its obligations with regard to the ▮▮▮▮▮▮ without material breach thereof.

112.    As a proximate result of Nationstar's breach, Plaintiff has suffered and continues to suffer irreparable harm unless Nationstar ceases making use of Plaintiff's misappropriated proprietary information.  Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief under ▮▮▮▮▮▮

113.    Plaintiff has been damaged as a result of Nationstar's breach in an amount to be proved at trial.

**FOURTH COUNT**
**(Breach of Contract Against Nationstar)**

114.    Plaintiff incorporates by reference Paragraphs 1 through 113 as though fully set forth herein.

115.    ▮▮▮▮▮▮

116.    Nationstar breached the ▮▮▮▮▮▮ by misappropriating, disclosing, sharing, and/or using Plaintiff's confidential information and trade secrets, including but not limited to revealing Plaintiff's confidential information and/or trade secrets to Defendant Quantarium without Plaintiff's consent, in violation of ▮▮▮▮▮▮.

117.    Nationstar's conduct in breaching the ▮▮▮▮▮▮ was willful, intentional, a violation of law and/or fraudulent and falls within the scope of Cal. Civ. Code § 1668.

118.     Plaintiff has performed all of its obligations with regard to the ▮▮▮▮▮▮ without material breach thereof.

119.    As a proximate result of Nationstar's breach, Plaintiff has suffered and continues to suffer irreparable harm unless Nationstar ceases making use of Plaintiff's misappropriated confidential information and trade secrets.  Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief under ▮▮▮▮▮▮

120.    Plaintiff has been damaged as a result of Nationstar's breach in an amount to be proved at

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

trial.

## FIFTH COUNT
### (Breach of Contract Against Xome)

121.    Collateral Analytics incorporates by reference Paragraphs 1 through 120 as though fully set forth herein.

122.    ███████████████████████████████████████████████████

123.    Xome breached the ███████████ by misappropriating, disclosing, sharing, and/or using Plaintiff's confidential information and trade secrets, including but not limited to revealing Plaintiff's confidential information and/or trade secrets to Defendant Quantarium without Plaintiff's consent in violation of ███████████.

124.    Xome's conduct in breaching the ███████████ was willful, intentional, a violation of law and/or fraudulent and falls within the scope of Cal. Civ. Code § 1668.

125.    Plaintiff has performed all of its obligations with regard to the ███████████ without material breach thereof.

126.    As a proximate result of Xome's breach, Plaintiff has suffered and continues to suffer irreparable harm unless Xome ceases making use of Plaintiff's misappropriated proprietary information. Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief under ████ ███████.

127.    Plaintiff has been damaged as a result of Xome's breach in an amount to be proved at trial.

## SIXTH COUNT
### (Breach of Contract Against Xome)

128.    Plaintiff incorporates by reference Paragraphs 1 through 127 as though fully set forth herein.

129.    ███████████████████████████████████████████████████

130.    Xome breached the ███████████ by misappropriating, disclosing, sharing, and/or using Plaintiff's confidential information and trade secrets, including but not limited to revealing Plaintiff's confidential information and/or trade secrets to Defendant Quantarium without Plaintiff's consent, in

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

violation of ████████████.

131.    Xome's conduct in breaching the ██████ was willful, intentional, a violation of law and/or fraudulent and falls within the scope of Cal. Civ. Code § 1668.

132.    Plaintiff has performed all of its obligations with regard to the ██████ without material breach thereof.

133.    As a proximate result of Xome's breach, Plaintiff has suffered and continues to suffer irreparable harm unless Xome ceases making use of Plaintiff's misappropriated confidential information and trade secrets.  Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief under ████████████.

134.    Plaintiff has been damaged as a result of Xome's breach in an amount to be proved at trial.

**SEVENTH COUNT**
**(Intentional Interference with Contractual Relations Against Quantarium)**

135.    Plaintiff incorporates by reference Paragraphs 1 through 134 as though fully set forth herein.

136.    The ████████████████ are valid contracts between Plaintiff and Defendants Nationstar and Xome, respectively, and Defendant Quantarium knew that Nationstar and Xome had contracted with Plaintiff.

137.    The ████████████████ are valid contracts between Plaintiff and Defendants Nationstar and Xome, respectively, and Defendant Quantarium knew that Nationstar and Xome had contracted with Plaintiff.

138.    Quantarium intentionally and falsely promoted its experience and achievements developing AVMs, as well as its ability to deliver the same or better quality AVMs relative to Plaintiff to Nationstar and Xome.  Quantarium intentionally and falsely promoted its ability to do so without having to copy Plaintiff's trade secrets and/or confidential information.

139.    Quantarium intentionally asked employees from Nationstar and Xome to obtain and relay Collateral Analytics' confidential information to Quantarium in violation of Nationstar's and Xome's obligations to Collateral Analytics.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

140.    Quantarium's acts were intentional and designed to breach or disrupt Plaintiff's contractual relationship with Nationstar and Xome, and did, in fact, result in the actual breach or disruption of the ███████████████ .

141.    As a proximate result of Quantarium's interference, Plaintiff has suffered and continues to suffer irreparable harm.  Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief.

142.    Plaintiff has been damaged as a result of Quantarium's conduct, as Quantarium has diverted substantially all of Nationstar and Xome's business from Plaintiff to Quantarium, in an amount to be proven at trial.

## EIGHTH COUNT
### (False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a), Against Quantarium)

143.    Plaintiff incorporates by reference Paragraphs 1 through 142 as though fully set forth herein.

144.    Quantarium's false advertising under 15 U.S.C. § 1125(a) includes at least its intentional and false promotion of its ability to deliver the same or better quality AVMs relative to Plaintiff to Nationstar and Xome, its intentional and false promotion of its experience and achievements in developing AVM products, and its intentional and false promotion of its products as its own, rather than illegal copies of Collateral Analytics' products.  Quantarium thereby misrepresented the nature, characteristics, and/or qualities of its goods, services, and/or commercial activities.  These misrepresentations were made in connection with Quantarium's acts of promoting and selling its goods and services to Nationstar and Xome.

145.    Quantarium has and continues to falsely promote its experience, achievements, and ability to deliver the same or better quality AVMs and data analytics tools as Plaintiff without having had to copy Plaintiff's trade secrets and/or confidential information to third-party customers.

146.    Quantarium's acts have at least tended to deceive a substantial number of Plaintiff's customers and potential customers, and were material in that they were likely to influence the purchasing decisions of those in the marketplace.

147.    Quantarium's conduct alleged here has caused Plaintiff injury and is malicious,

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

fraudulent, knowing, and deliberate, thus entitling Collateral Analytics to an accounting of Plaintiff's profits, increased damages, and attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. § 1117.

148.    As a proximate result of Quantarium's false and misleading advertising and promotions, Plaintiff has suffered and continues to suffer irreparable harm unless Quantarium ceases making false statements to the marketplace.  Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief.

### NINTH COUNT
### (False Advertising Under California Business and Professions Code § 17500 *et seq.* Against Quantarium)

149.    Plaintiff incorporates by reference Paragraphs 1 through 148 as though fully set forth herein.

150.    Quantarium's false advertising under California Business & Professions Code § 17500 *et seq.* includes at least its intentional and false promotion of its ability to deliver the same or better quality AVMs relative to Plaintiff and its intentional and false promotion of its experience and achievements in developing AVM products to Nationstar and Xome.  Quantarium has also intentionally and falsely promoted its ability to deliver the same or better quality AVMs and data analytics tools as Plaintiff without having to copy Plaintiff's trade secrets and/or confidential information to Nationstar and Xome. Quantarium thereby misrepresented the nature, characteristics, and/or qualities of its goods, services, and/or commercial activities.  These misrepresentations were made in connection with Quantarium's acts of promoting and selling its goods and services to Nationstar and Xome.

151.    Quantarium continues to falsely promote its experience, achievements, and ability to deliver the same or better quality AVMs and data analytics tools as Plaintiff without having had to copy Plaintiff's trade secrets and/or confidential information to third-party customers.

152.    Quantarium's acts have at least tended to deceive a substantial number of Collateral Analytics' customers and potential customers, and were material in that they were likely to influence the purchasing decisions of those in the marketplace.

153.    As a proximate result of Quantarium's false and misleading advertising and promotions,

32

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Plaintiff has suffered and continues to suffer irreparable harm unless Quantarium ceases its false and misleading advertising and promotions.  Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief.

**TENTH COUNT**

**(Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, Against All Defendants)**

154.    Plaintiff incorporates by reference Paragraphs 1 through 153 as though fully set forth herein.



**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

158.    Through its unauthorized access, Quantarium has wrongfully obtained information from Plaintiff's protected computers, computer systems, and/or computer networks in violation of 18 U.S.C. § 1030(a)(2)(C), including but not limited to Plaintiff's proprietary information and permissible-use MLS data.

159.

160.    At all relevant times, Quantarium acted with the knowledge and consent of Nationstar and Xome, and/or as agents of Nationstar and Xome.

161.    Through their actions, Defendants have caused Plaintiff to suffer loss within the meaning of 18 U.S.C. § 1030(e)(11) for Plaintiff's costs incurred in investigating and responding to Defendants' misconduct, including but not limited to the costs associated with identifying Quantarium's unauthorized access to Plaintiff's computers, computer systems, and computer networks, and Defendants' other misconduct, assessing the damage to Plaintiff's computers, and addressing Quantarium's unauthorized access to Plaintiff's computers, and attorneys' fees associated with investigating, assessing, and addressing Defendants' unauthorized access.

162.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be proved at trial.

163.    As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer irreparable harm.  Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief as provided in 18 U.S.C. § 1030(g).

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**ELEVENTH COUNT**
**(Violation of the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502, Against All Defendants)**

164.    Plaintiff incorporates by reference Paragraphs 1 through 163 as though fully set forth herein.



167.    Defendants knowingly accessed and without permission used Plaintiff's data, computers, computer systems and/or computer networks in order to devise and/or execute a scheme to defraud and deceive Plaintiff in violation of California Penal Code § 502(c)(1).



**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

171.

172.    At all relevant times, Quantarium acted with the knowledge and consent of Nationstar and Xome, and/or as agents of Nationstar and Xome.

173.    Through their actions, Defendants have caused Plaintiff to suffer loss within the meaning of California Penal Code § 502(e)(1) for Plaintiff's costs incurred in investigating and responding to Defendants' misconduct, including but not limited to the costs associated with identifying Quantarium's unauthorized access to Plaintiff's computers and Defendants' other misconduct, assessing the damage to Plaintiff's computers, and addressing Quantarium's unauthorized access to Plaintiff's computers, and attorneys' fees associated with investigating, assessing, and addressing Defendants' unauthorized access.

174.    Plaintiff is entitled to punitive or exemplary damages in connection with Defendants' unauthorized access under California Penal Code § 502(e)(4) because Defendants acted with oppression, fraud, and/or malice, as those terms are defined in California Civil Code § 3294(c).  As alleged above, Defendants misappropriated Plaintiff's trade secrets and confidential information for the purpose of developing knock-off products to compete with Plaintiff.  Throughout their process of misappropriating Plaintiff's confidential information, Defendants concealed Quantarium's role in the misappropriation, affirmatively lied to Plaintiff, and falsely expressed a business need to access Plaintiff's confidential information.

175.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be proved at trial.

176.    As a proximate result of Defendants actions, Plaintiff has suffered and continues to suffer irreparable harm.  Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiff has no adequate remedy at law and is entitled to permanent injunctive relief as provided in California Penal Code § 502(e)(1).

COMPLAINT / CASE NO. 18-19

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

**PRAYER FOR RELIEF**

2
   WHEREFORE, Collateral Analytics prays for relief as follows:

3
   a.      an award of damages, unjust enrichment, lost profits, and/or a reasonable royalty for

4
Defendants' willful and malicious misappropriation of Collateral Analytics' trade secrets;

5
   b.      an award of exemplary damages under 18 U.S.C. § 1836 and California Civil Code

6
section 3426.3, up to twice actual damages, because Defendants willfully and maliciously

7
misappropriated Collateral Analytics' trade secrets;

8
   c.      an award of compensatory damages, restitution, and/or lost profits for Defendants

9
Nationstar and Xome's breaches of its contracts with Collateral Analytics;

10
   d.      an award of compensatory damages, restitution, and/or lost profits for Defendant

11
Quantarium's intentional interference and false advertising;

12
   e.      an award of compensatory damages for Defendants' violations of the CFAA;

13
   f.      an award of punitive or exemplary damages for Defendants having acted with oppression,

14
fraud, and/or malice in their willful violation of California Penal Code § 502(c);

15
   g.      an injunction preventing Defendants and anyone acting in concert therewith from further

16
misuse or disclosure of Collateral Analytics' confidential information, including its trade secrets; from

17
falsely advertising Quantarium's knock-off products; and from further access to and misuse of Plaintiff's

18
computers, computer systems, or computer networks;

19
   h.      an award of Collateral Analytics' attorneys' fees incurred in connection with this matter,

20
which arises out of Nationstar and Xome's obligations under ███████ and Collateral Analytics'

21
enforcement of its rights thereunder; Defendants' willful and malicious misappropriation of Collateral

22
Analytics' trade secrets under 18 U.S.C. § 1836(b)(3) and Cal. Civ. Code § 3426.4; Quantarium's willful

23
violation of 15 U.S.C. § 1125(a); and Defendants' willful violation of California Penal Code § 502(e)(2);

24
   i.      prejudgment and post-judgment interest and costs of court; and

25
   j.      such other relief as the Court may deem just equitable and proper.

26
**JURY DEMAND**

27
   Plaintiff demands trial by jury.

28

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

Dated:  January 2, 2018

DURIE TANGRI LLP

2

By: _____

3

CLEMENT S. ROBERTS

RAGESH K. TANGRI

4

LAUREN E. KAPSKY

TIMOTHY HORGAN-KOBELSKI

5

Attorneys for Plaintiff

6

COLLATERAL ANALYTICS LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28