UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLATERAL ANALYTICS LLC, <br> Plaintiff, <br> v. <br> NATIONSTAR MORTGAGE LLC, et al., <br> Defendants. | Case No. 18-cv-00019-RS (JSC) <br><br> **ORDER RE: SHARING OF CONFIDENTIAL INFORMATION DISCOVERY DISPUTES** <br><br> Re: Dkt. Nos. 162, 163 |

Through joint discovery letter briefs, the parties seek to prevent one of the other side's designated experts from reviewing the objecting party's confidential information. (Dkt. Nos. 162, 163.) The Court heard oral argument on July 2, 2019.

## I.   Thomas Huffman

The parties stipulated to a protective order to govern the sharing of confidential information in this case. (Dkt. No. 62.) Among other things, the Order allows a party receiving the opponent's confidential information to share the information with "Experts" as defined in the Order. (Dkt. No. 62 at ¶ 7.2(c).) An "Expert" is defined as "a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) *is not a past* or current *employee* of a Party or *of a Party's competitor,* and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor." (*Id.* ¶ 2.6 (emphasis added).)

Plaintiff asks to share Defendants' confidential information with its retained expert, Thomas Huffman. It is undisputed, however, that Mr. Huffman previously worked for one of Defendants' current competitors, Clear Capital. Thus, under the plain language of the Stipulated Protective Order, Mr. Huffman is not qualified to receive Defendants' confidential information--

1 Mr. Huffman is a past employee of a Party's competitor.

2 Plaintiff nonetheless insists that Mr. Huffman should be allowed to review Defendants' confidential information because Defendants did not begin competing with Clear Capital until June 2015 at the earliest—two years after Mr. Huffman ceased employment with the company. It contends that because Defendants cannot articulate any potential harm from sharing their confidential information with Mr. Huffman, their objection to Plaintiff doing so should be overruled. (*See* Dkt. No. 62 ¶ 7.4.)

The Court disagrees. The plain language of the Protective Order precludes Plaintiff from sharing Defendants' confidential information with Mr. Huffman. The Protective Order does not have an exception for experts who were not employed by the competitor at the time it became a party's competitor; nor does it have an exception for experts who are no longer actively involved in the relevant subject matter (Mr. Huffman is currently concentrating on his art). As Defendants explained at oral argument, in choosing their experts they followed the language negotiated by the parties and thus would be harmed by Plaintiff's attempt to change the rules mid-stream. Further, the parties' chosen rule makes some sense as it eliminates the need for the Court to make factual findings and resolve disputes as to exactly when a proposed expert worked for a company and when that company actually began competing with a party—disputes that the Court would have to resolve here if it accepted Plaintiff's argument and ignored the Protective Order's plain language.

The cases upon which Plaintiff relies are unpersuasive. In *Advanced Micro Devices, Inc. v. LG Electronics, Inc.*, 2017 WL 3021018 (N.D. Cal. July 17, 2017), the objecting third-party did not argue that the plaintiff's expert had performed work for a party's competitor (or even its own competitor); thus, the Protective Order language at issue here was not implicated. *Verigy US, Inc. v. Mayder*, 2008 WL 4183493 (N.D. Cal. Sep. 8, 2008), is not helpful as the court gave no explanation for its decision not to follow the governing protective order's plain language.

As there is no dispute that Mr. Huffman was employed by a competitor of Defendants, he may not receive Defendants' confidential information under the plain language of the Stipulated Protective Order. (Dkt. No. 62 ¶ 2.6.)

## II. Lee Kennedy and Kevin Herzberg of AVMetrics

AVMetrics is an independent specialist in the testing and application of Automated Valuation Models (AVMs). AVMetrics' core business provides AVM testing and benchmarking. It uses "its knowledge of the strength and weaknesses of commercially available AVMs," such as that offered by Plaintiff, to help AVMetrics' "customers choose the most competent AVM that will give them the best results at the lowest risk for their particular needs." (Dkt. No. 163-4 ¶ 3.) The core business also consults with AVM businesses by "pointing out areas where the AVM is underperforming." (*Id.* ¶ 6.) AVMetrics also offers a litigation support business, including expert consulting and testimonial services. Defendants have retained AVMetrics for its litigation support services and propose that they be allowed to share Plaintiff's confidential information with Lee Kennedy and Kevin Herzberg, each of whom work for (and in the case of Mr. Kennedy own), AV Metrics. Plaintiff objects to their confidential information being shared with anyone from AVMetrics on the grounds that it has an ongoing confidential relationship with AV Metrics in which it has shared its confidential information subject to nondisclosure agreements. It also argues that given the nature of AVMetrics' core business, there is a risk that AV Metrics will disclose Plaintiff's confidential information to a competitor or use the information to its competitive disadvantage.

"In the ordinary course of litigation, a party is owed some degree of deference 'in retaining and preparing an expert with the relevant industry experience and availability.'" *Advanced Micro Devices, Inc. v. LG Electronics, Inc.*, 2017 WL 3021018 *1 (N.D. Cal. July 17, 2017) (internal quotation marks and citation omitted). "However, in particular circumstances, that interest must be balanced against an increased risk of improper use or disclosure borne by the producing party." *GPNE Corp. v. Apple Inc*., No. 5-12-CV-2885 LHK PSG, 2014 WL 1027948, at *1 (N.D. Cal. Mar. 13, 2014). AVMetrics receipt of Plaintiff's confidential information presents such a risk.

AV Metrics' ongoing core business involves consulting for Plaintiff's competitors. It advises Plaintiff's competitors on the strengths and weaknesses in their own AVM products. Common sense dictates that AVMetrics will have a difficult time separating what it learned about Plaintiff's AVM products in this litigation when advising Plaintiff's competitors in the future.

3

Further, when advising other customers on what AVM product to purchase, AVMetrics will, because of this litigation, have more "confidential" information about Plaintiff's products than it will about other company's products. These circumstances create a risk that it will use this "extra" information in evaluating Plaintiff's AVM products and advising Plaintiff's competitors as part of its core business. *See Symantec Corp. v. Acronis Corp.,* No. 11-5310 EMC JSC, 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012).

Apparently recognizing this risk, AVMetrics claims that its "people who work in litigation support do not also perform testing or consulting services in AVMetrics' core business, and do not share any confidential information with those that do. John Walley Doug Were, Allison McDonald, and [Lee Kennedy] are all part of the litigation support group. Kevin Herzberg is a consultant with AVMetrics and works exclusively with the litigation support group." (Dkt. No. 163-4 ¶ 9.) This claim, however, is not credible, even apart from its lack of any specifics as to how these persons are "walled off." Just one week after Mr. Kennedy signed his declaration attesting that AVMetrics' five litigation support employees/contractors are "walled off" from its core business, a representative of AVMetrics advised Plaintiff's outside attorney in connection with a subpoena that AVMetrics has only "6 employees/contractors." That would leave one employee to perform all of AVMetrics' core business. Not credible. Further, Mr. Kennedy does not explain how he, as a founder and owner, is "walled off" from a core part of his business. In any event, emails between Plaintiff and AVMetrics show that such a wall is more aspirational than real.

Defendants do not claim that AVMetrics possesses unique expertise; indeed, they contend AV Metrics never reviews source code or algorithms (which begs the question of why they need to review Plaintiff's source code and algorithms to offer assistance in this case). As Plaintiff has met its burden of showing that AVMetrics' ongoing work creates a substantial risk of misuse of Plaintiff's confidential information, and that the risk outweighs Defendants need to share the information with AVMetrics, Defendants may not share Plaintiff's confidential information with Mr. Kennedy or Mr. Herzberg.

The Court cautions that it is not ruling that no one from AV Metrics may serve as an expert

4

in this case; it is ruling only that pursuant to paragraph 7.4 of the Protective Order, neither Mr. Kennedy nor Mr. Herzberg may receive Plaintiff's confidential information.

The Administrative motion to file exhibits under seal is GRANTED.

This Order disposes of Docket Nos. 162 and 163.

**IT IS SO ORDERED.**

Dated: July 9, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge