UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLATERAL ANALYTICS LLC, <br> Plaintiff, <br> v. <br> NATIONSTAR MORTGAGE LLC, et al., <br> Defendants. | Case No. 18-cv-00019-RS (JSC) <br><br> **ORDER RE: PLAINTIFF'S MOTION TO RETAIN CONFIDENTIALITY** <br> Re: Dkt. No. 180 |

This matter is before the Court on discovery referral from the district court. (Dkt. No. 68.) Plaintiff asks the Court to confirm that Plaintiff has properly designated documents produced to Nationstar and Xome as "Confidential" and to Quantarium as "Attorneys Eyes Only" ("AEO") pursuant to the stipulated Protective Order governing this case. (Dkt. No. 180.) Plaintiff asserts that judicial intervention is needed because Defendants insist that none of the documents are covered by the Protective Order because Plaintiff provided the documents to Nationstar and Xome prior to the litigation. After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), vacates the August 22, 2019 hearing, and holds that the pre-litigation disclosure does not remove the documents from the coverage of the Protective Order because the documents were shared pursuant to a confidentiality agreement. The Court further orders Plaintiff to review its AEO designation of documents produced to Quantarium and determine on an individual basis whether that designation is warranted. As the parties have not met and conferred on whether any specific document warrants a Confidential or AEO designation based on the document's contents, the Court is not determining whether any particular designation is appropriate, except to the limited extent set forth below.

# BACKGROUND

## I. Pre-litigation Confidentiality Agreements

Prior to this litigation Plaintiff and Defendants Nationstar and Xome entered into several agreements regarding the disclosure and use of their confidential information within the context of their business relationship. On December 4, 2012, Plaintiff and Nationstar entered into a Mutual Non-Disclosure Agreement ("MNDA"). (Dkt. No. 59-1 at ¶ 23.) Plaintiff entered into a similar MNDA with Xome ("then known as Solutionstar Settlement Services LLC") in August 2013. (*Id.* at ¶ 33.) The MNDAs "contemplate[ ] an exchange of proprietary information" between the parties, and protect that "information from disclosure, misappropriation, or unauthorized use." (*Id.* at ¶¶ 23, 33.)

Plaintiff and Nationstar entered into a Master Services Agreement ("MSA") on June 18, 2013. (*Id.* at ¶ 27; *see also* Dkt. No. 59-2, Ex. B.) Plaintiff entered into a similar MSA with Xome on October 22, 2013. (Dkt. No. 59-1 at ¶ 34; *see also* Dkt. No. 59-3, Ex. C.) The MSAs "supersede[ ] any and all prior or contemporaneous agreements, understandings, negotiations or warranties or representations between the Parties with respect to the subject matter of [the MSAs]." (Dkt. Nos. 59-2 at 16, § 14.10 & 59-3 at 19, § 14.10.) The MSAs protect the parties' "Confidential Information," defined as:

> any and all technical and non-technical information, including trade secrets, know-how and proprietary information, data, software, firmware, designs, schematics, techniques, plans or any other information relating to any research project, work in process, future development, scientific, engineering, manufacturing, marketing or business plans or financial or personnel matters relating to either Party or its present or future products, sales, suppliers, customers, employees, investors or affiliates and disclosed or otherwise supplied in confidence by either Party to the other Party, acquired in the course of carrying out the tasks hereunder or as a result of access to the premises of a Party (including in the context of a request for information or request for proposal, or related to discussions between the Parties in anticipation of potential Statements of Work).

(Dkt. Nos. 59-2 at 2, § 1.7 & 59-3 at 3, § 1.7.) The MSAs further provide that:

> Confidential Information includes: (i) information disclosed in a written or other tangible form which is clearly marked with a "confidential" or "proprietary" legend or other comparable legend; (ii) information disclosed orally or visually which is identified as confidential at the time of disclosure and confirmed in writing within

> a reasonable time; (iii) any other information which a reasonable person would deem confidential under the context of disclosure or due to the nature of the information; and (iv) in the case of [Nationstar and Solutionstar, Nationstar/Consumer Information and Solutionstar/Consumer Information].

(Dkt. Nos. 59-2 at 2, § 1.7 & 59-3 at 3-4, § 1.7.) The MSAs require the "Receiving Party . . . to keep Confidential Information in the strictest confidence and safeguard such information using . . . [at least] a reasonable degree of care." (Dkt. Nos. 59-2 at 9, § 6.1 & 59-3 at 11, § 6.1.) A receiving party is prohibited from "us[ing] the Disclosing Party's Confidential Information for any purpose other than the exclusive purpose of fulfilling its obligations under [the MSAs] and any Statement of Work." (*Id.*) Further, "[i]n the event the parties have entered into a separate confidentiality agreement, such confidentiality agreement will not apply to [the MSAs]." (Dkt. Nos. 59-2 at 9-10, § 6.1 & 59-3 at 11 at § 6.1.)

There is no dispute that Plaintiff did not have similar MNDAs or MSAs with Quantarium prior to this litigation. There is likewise no dispute that Quantarium did not possess the documents at issue prior to this litigation.

## II. The Protective Order

The parties stipulated to a Protective Order on May 17, 2018. (Dkt. No. 62.) The Protective Order provides for three confidentiality designations for material a party produces to the opposing party "in disclosures or in responses to discovery": "Confidential"; "Highly Confidential – Attorneys' Eyes Only"; or "Highly Confidential – Source Code." (*Id.* at ¶ 2.4.) The Protective Order defines "Confidential" information as "information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)." (*Id.* at ¶ 2.2.) The AEO designation applies only to "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means." (*Id.* at ¶ 2.7.)

The Protective Order covers "any Disclosure or Discovery Material" that carries one of the three confidentiality designations listed above, as well as: "(1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

1  Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that
2  might reveal Protected material." (*Id.* at ¶ 3.) However, the Protective Order does not cover "any
3  information known to the Receiving Party prior to the disclosure or obtained by the Receiving
4  Party after the disclosure from a source who obtained the information lawfully and under no
5  obligation of confidentiality to the Designating Party." (*Id.*)

Unlike AEO-designated material, documents designated as "Confidential" may be shared with "the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgment and Agreement to be Bound.'" (*Compare id.* at ¶ 7.2(b) *with* ¶ 7.3.) Both categories of material may, however, be disclosed to "the author or recipient of a document containing the information or a custodian or other person who otherwise properly possessed or knew the information." (*Id.* at ¶¶ 7.2(g), 7.3(f).) The Protective Order provides for judicial intervention in the event the parties cannot resolve their dispute over the designation of documents and places the "burden of persuasion in any such challenge proceeding . . . on the Designating Party." (*Id.* at ¶ 6.3.)

### III. The Court's May 29, 2019 Order

Defendants previously moved to retain their designation of 70 documents as "Highly Confidential-Attorneys' Eyes Only," pursuant to the Protective Order. (*See* Dkt. No. 148.) Plaintiff challenged Defendants' designation and sought to re-designate the material as "Confidential" because Plaintiff possessed the same documents prior to this litigation without an AEO designation. (Dkt. No. 152.) The Court denied Defendants' motion, concluding, in pertinent part:

> Defendants do not dispute that the documents at issue were sent to or from Plaintiff prior to the litigation, nor do Defendants directly address the Protective Order's inapplicability to "any information known to the Receiving Party prior to the disclosure," (*see* Dkt. No. 62 at ¶ 3), or the Protective Order's provision allowing for disclosure of AEO-designated material to "the author or recipient of a document containing the information or a custodian or other person who otherwise properly possessed or knew the information," (*id.* at ¶ 7.3(f)). Defendants instead broadly assert that "[f]or the [AEO] designation in the Protective Order to have meaning in this case, the parties must be able to use it to stop the further spread of secret

4

information, even when a party has previously seen that information in some limited capacity." (*See* Dkt. No. 148 at 7.) Defendants' arguments fail to carry their burden of demonstrating that the AEO-designation is proper because the Protective Order—by its plain terms—does not even cover the documents at issue.

(Dkt. No. 160 at 4.) Further:

> Plaintiff does not argue that the AEO-designated material must be made public and instead seeks only to re-designate the material as "Confidential." The Court declines to re-designate the documents, however, because the documents do not even qualify as "Confidential" material under the Protective Order. (*See id.*) The Court assumes that the parties exchanged the documents at issue prior to Defendants' litigation disclosure with some sort of restrictions in place, but the parties do not provide the Court with any information on that score. Instead, the parties base their respective arguments solely on the terms of the Protective Order. In other words, they offer no arguments for designating the material as "Confidential" or "AEO" separate and apart from the Protective Order. Those arguments must fail because the material does not even fall within the Protective Order's scope.

(Dkt. No. 160 at 4-5.) Thus, the Court held that "[u]nder the plain terms of the Protective Order, Defendants cannot retroactively declare information AEO that was *shared with Plaintiff pre-litigation without such restrictions*." (*Id.* at 5 (emphasis added).) The Court noted, however, that the parties were "nonetheless free to stipulate that the documents shall be treated with a particular confidentiality designation under the Protective Order." (*Id.*)

## IV. The Documents at Issue

There is no dispute that the nearly 16,000 documents at issue constitute pre-litigation communications between Plaintiff and Nationstar and Xome. Plaintiff initially made a single production of the documents to all Defendants on May 7, 2019, designating each document as AEO. (Dkt. No. 180-1 at ¶ 2.) Plaintiff's cover letter for the production states, in pertinent part:

> We have designated these documents as [AEO] pursuant to the Model Protective Order agreed upon by the parties. Notwithstanding, we are willing to allow Defendants Xome and Nationstar to treat these documents as CONFIDENTIAL to the extent their officers, directors, or employees appear on the documents. However, as to Quantarium, these documents should be treated as AEO as it does not appear that any Quantarium officers, directors, or employees appeared on these documents.

(Dkt. No. 180-2, Ex. A at 2.) Defendants challenged the confidentiality designation for every

document on the grounds that the documents were "exchanged between the parties prior to litigation."[1] (Dkt. No. 180-1 at ¶ 4 (internal quotation marks omitted).)

On July 15, 2019, Plaintiff "reproduced its May 7, 2019 production" in "three separate productions . . . to each Defendant." (*Id.* at ¶ 6.) The productions "assign[ed] specific confidentiality designations to reflect [Plaintiff's] prior position regarding each Defendant's ability to review the documents"; specifically: "[I]f a party received [a document] prior to litigation, that party should now have a version designation [sic] Confidential. To the extent a party had not received the [document] prior to litigation, the party should now have a second copy of the same document, still designated AEO." (Dkt. No. 180-1 at ¶ 6.)

## DISCUSSION

The primary question is whether Plaintiff's production of the documents to Nationstar and Xome prior to the litigation pursuant to confidentiality agreements means the documents are not covered by the Protective Order. Because Quantarium was not in receipt of the pre-litigation documents at issue prior to Plaintiff's disclosure in this action, the Court separately addresses the July 2019 reproduction to Nationstar and Xome of documents designated as "Confidential," and to Quantarium of documents designated as "AEO."

### I. Documents Produced to Nationstar and Xome

#### A. The documents are subject to the Protective Order

The Protective Order does not cover "any information known to the Receiving Party prior to the disclosure." (Dkt. No. 62 at ¶ 3.) The issue presented is whether the Protective Order covers information known to the Receiving Party pursuant to a pre-litigation contractual confidentiality obligation prior to disclosure in this action. The Court concludes that it does. Simply put, there is nothing to suggest that the Protective Order's lack of protection for "any information known to the Receiving Party prior to disclosure," operates to *remove* independent

---

[1] Plaintiff's counsel attests that "[d]uring the meet and confer on this issue, Defendants stated that they would withdraw their challenge if Collateral Analytics agreed that the Defendants could designate their pre-litigation correspondence with Collateral Analytics as AEO notwithstanding the Court's May 29, 2019 Order denying that request." (Dkt. No. 180-1 at ¶ 5; *see also* Dkt. No. 180-3, Ex. B at 4 (email from Defendants' counsel to Plaintiff's counsel stating same).)

contractual confidentiality obligations in place for pre-litigation documents containing confidential commercial information such that those documents should be public for purposes of litigation.

Defendants assert that Plaintiff has not shown that the documents "carry a preexisting confidentiality obligation." (Dkt. No. 189 at 11.) They insist that Plaintiff's "confidentiality argument relies solely on the defunct MNDA's definition of confidential documents," . . . [b]ut the confidentiality provisions of the MNDAs expired when the parties entered into . . . the MSAs." (*Id.*) Not so. Plaintiff's motion cites *both* the MNDAs and MSAs in support of maintaining its confidentiality designations. (*See* Dkt. No. 180 at 3-4, 6-7, 9.)

The Court's determination that the documents can fall within the Protective Order does not conflict with the Court's May 2019 Order because Defendants' motion to retain confidentiality did not address any pre-litigation confidentiality obligations. Defendants instead relied *solely* on the Protective Order as their basis for designating 70 pre-litigation documents as "AEO," even though the Protective Order states that it does not apply to information the Receiving Party obtained prior to the litigation. Because Defendants' motion did not discuss any pre-litigation restrictions on the documents at issue, let alone offer any evidence of such restrictions, the Court held that "[u]nder the plain terms of the Protective Order, Defendants cannot retroactively declare information AEO that was shared with Plaintiff pre-litigation without such restrictions." (Dkt. No. 160 at 5.)

Here, in contrast, Plaintiff has shown that Nationstar and Xome were under contractual confidentiality obligations with Plaintiff at the time of the exchange of the pre-litigation documents at issue. No party has argued, and the Court does not find, that the Protective Order intended to exclude from its coverage such documents. Such a result would make no sense and would be contrary to the stated purpose of the Protective Order: "Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted." (Dkt. No. 62 at ¶ 1.)

**B. Plaintiff is not seeking "new and different" confidentiality restrictions**

Defendants next argue that Plaintiff's confidentiality designations under the Protective Order impermissibly "add new and different confidentiality restrictions to documents already

7

within Nationstar's or Xome's possession." (Dkt. No. 189 at 10.) The Court disagrees.

Plaintiff's July 2019 reproduction to Nationstar and Xome removed the AEO designation; thus, there is nothing substantively "new" about the current Confidential designation under the Protective Order in comparison to the parties' treatment of the same information as confidential under the MSAs. It is thus unclear how a confidentiality designation under the Protective Order for documents that already fall under the MSAs hinders Defendants' ability to defend themselves in this action. While it is true that the Protective Order prohibits use of protected documents for any purpose other than "prosecuting, defending, or attempting to settle this litigation," (*see* Dkt. No. 62 at ¶ 7.1), that restriction does not affect Nationstar's or Xome's preexisting obligations under the MSAs, which restrict use of Confidential Information to fulfilling obligations under the MSAs, (*see* Dkt. Nos. 59-2 at 9, § 6.1 & 59-3 at 11, § 6.1), or impose any additional burden on those Defendants. Indeed, as Plaintiff notes, because "Nationstar and Xome are no longer [Plaintiff's] customers[,] . . . Defendants should not be using the [documents at issue]—or any preexisting copies of the same documents—*except for purposes of this litigation*." (Dkt. No. 202 at 5.)

### C. Judicial estoppel does not bar Plaintiff's position

"[J]udicial estoppel[ ] generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citation omitted). There are "several factors [that] typically inform the decision whether to apply the doctrine in a particular case," the first being that "a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* at 750; *see also Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 554 (9th Cir. 2006) (noting that an "inconsistent factual or legal position is a threshold requirement" for judicial estoppel) (internal quotation marks and citation omitted). Defendants assert that judicial estoppel precludes Plaintiff from "now arguing that the Protective Order can protect [Plaintiff's] pre-suit communications between the parties" because Plaintiff successfully argued in opposition to Defendants' earlier motion to retain confidentiality that the "Protective Order . . . does not cover information 'known to the Receiving Party prior to the disclosure.'"

1  (Dkt. No. 189 at 13 (quoting Dkt. No. 152 at 2).) The Court disagrees that Plaintiff's arguments

2  are "clearly inconsistent" for two reasons.

3  First, Plaintiff did not argue that the pre-litigation communications at issue in Defendants'

4  motion to retain confidentiality should be stripped of their confidentiality designation because the

5  information was not covered under the Protective Order; Plaintiff instead challenged the AEO

6  designation of the documents and argued that they should be re-designated as "Confidential." (*See*

7  Dkt. No. 152 at 2 (challenging Defendants' "over-designation" of the documents and "ask[ing] the

8  Court to re-designate the documents as Confidential").) Plaintiff's opposition argued, in pertinent

9  part:

> The Stipulated Protective Order does not serve as the basis for *new* confidential obligations for documents *already* exchanged between the parties—it does not cover information "known to the Receiving Party prior to the disclosure." *See* ECF No. 62 § 3. The information in the emails and attachments at issues are already known to Collateral Analytics because they received them before litigation began. Furthermore, the AEO designation is only available for "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party … would create a substantial risk of serious harm that could not be avoided by less restrictive means." See id. § 2.7. (emphasis added). Collateral Analytics already has these documents— allowing Collateral Analytics to see Bates-stamped copies does not create a substantial risk of serious harm. By contrast, allowing Defendants' over-designation of these document unnecessarily restricts Collateral Analytics. Collateral Analytics, therefore, asks the Court to re-designate the documents Confidential.

19  (Dkt. No. 152 at 2.) Although Plaintiff did assert that the Protective Order "does not cover

20  information 'known to the Receiving Party prior to the disclosure,'" it did so in the context of

21  arguing that Defendants' AEO designation constituted an impermissible "*new* confidential

22  obligation for documents already exchanged between the parties." (*Id.*) Plaintiff thus argued that

23  Defendants failed to meet their burden that the AEO designation applied and stated "[i]t is difficult

24  to understand why Defendants did not just designate these documents Confidential in the first

25  place and avoid this dispute altogether." (*Id.* at 2-5; *see also id.* at 2 n.1 (noting that Plaintiff

26  "challenged Defendants' AEO designations in accordance with the terms of the Stipulated

27  Protective Order, seeking to comply with and enforce those terms"); *id.* at 4 n.3 ("The real

28  problem with Defendants' AEO designation is that—for these specific documents—there is no

9

'substantial risk of harm' arising from a Confidential designation.").) Thus, Plaintiff's argument in opposition to Defendants' motion—the pre-litigation communications should be designated "Confidential"—is consistent with Plaintiff's argument here: the pre-litigation communications between Plaintiff, Nationstar, and Xome warrant their Confidential designation.

Second, Plaintiff is asserting an independent, contractual basis for its confidentiality obligations regarding material previously sent to Nationstar and Xome—the MNDAs and MSAs—as support for its "Confidential" designation under the Protective Order. As noted in the Court's May 2019 Order regarding Defendants' motion to retain confidentiality, Defendants—unlike Plaintiff here—did not argue that the material at issue was exchanged under a preexisting confidentiality obligation. (*See* Dkt. No. 160 at 4-5 (noting that the parties "base[d] their respective arguments solely on the terms of the Protective Order").)[2] Defendants' lament that Plaintiff "was well aware of its pre-existing obligations for Defendants' documents that Collateral Analytics moved to de-designate" and thus Plaintiff's argument then was disingenuous, (*see* Dkt. No. 189 at 13), mischaracterizes Plaintiff's argument. Plaintiff's opposition to Defendants' motion did not seek to "*de-designate*" Defendants' documents, it instead sought only to "*re-designate*" those documents as "Confidential." The Court rejected Plaintiff's re-designation request because there was no hint in the parties' submissions—and in particular Defendants' submission—that the documents had been previously exchanged pursuant to a confidentiality agreement. Thus, there is nothing "disingenuous" in Plaintiff failing to reference its alleged preexisting confidentiality obligations in challenging Defendants' AEO designation and seeking to have the material re-designated as "Confidential." What is baffling is that Defendants did not reference these alleged restrictions in support of their motion to retain confidentiality.

---

[2] Had the same argument regarding the parties preexisting contractual confidentiality obligations been before the Court in May 2019, the Court could have re-designated the AEO material then at issue as "Confidential," as Plaintiff requested at the time. (*See* Dkt. No. 160 at 4 ("Plaintiff does not argue that the AEO-designated material must be made public and instead seeks only to re-designate the material as 'Confidential.' The Court declines to re-designate the documents, however, because the documents do not even qualify as 'Confidential' material under the Protective Order.").) That said, and as the Court noted in its May 2019 Order, the parties are of course free to stipulate that those documents "shall be treated with a particular confidentiality designation under the Protective Order." (*Id.* at 5.)

10

1  Accordingly, judicial estoppel does not apply for the threshold reason that Plaintiff's arguments in support of the instant motion are not "clearly inconsistent" with its earlier position regarding Defendants' motion to retain confidentiality. *See Boody*, 468 F.3d at 554.

## II. "AEO" Designation as to Documents Produced to Quantarium

Defendants do not dispute that Quantarium was *not* party to the pre-litigation communications at issue. Thus, there is no basis for Defendants to even suggest that the Protective Order does not cover Plaintiff's production of documents to Quantarium. That said, Plaintiff seems to suggest that because the documents were produced subject to a confidentiality agreement between Plaintiff and Nationstar and Xome, the documents are entitled to an AEO designation as to Quantarium merely because Quantarium is a competitor. The Court disagrees.

With respect to the few examples identified by Defendants in their opposition, (*see* Dkt. No. 189 at 9-10 (discussing exhibits at Dkt. No. 188-7 – 188-11, Exs. 1-5 designated as "AEO")), the Court agrees that Exhibits 1, 2, 4 and 5 do not on their face warrant a confidentiality designation. Those exhibits consist of a calendar invite and emails regarding meeting times; they do not contain any discussion of confidential commercial information from which the Court could find a "serious risk of substantial harm" warranting an AEO designation, or even a Confidential designation. (*See* Dkt. No. 62 at ¶ 2.7.) Thus, Plaintiff must de-designate those exhibits and engage in a good-faith review of the remainder its July 2019 production to Quantarium and re-designate or de-designate any other documents that fail to meet the heightened AEO standard or lower Confidential standard.

## III. Administrative Motions to Seal

The parties filed three administrative motions to seal in conjunction with the instant motion, pursuant to Civil Local Rule 79-5. (*See* Dkt. Nos. 179, 188, 201.) First, Plaintiff moves to file under seal three exhibits submitted in support of its motion because the documents contain confidential commercial information. (Dkt. No. 179.) The Court has reviewed the exhibits, (Dkt. Nos. 179-2 – 179-4, Exs. D-F), and Plaintiff's declaration in support (Dkt. No. 179-1 at ¶¶ 3-6), and agrees that the material warrants sealing.

Second, Defendants move to file under seal exhibits submitted in support of their

11

opposition to the instant motion and portions of their opposition briefing that cite those exhibits because Plaintiff designated the documents as "AEO" pursuant to the Protective Order. (Dkt. No. 188.) Plaintiff submitted a responsive declaration as required under Civil Local Rules 79-5(d)(1)(A), 79-5(e)(1), attesting that the material warrants sealing because it contains confidential commercial information. (Dkt. No. 198 at ¶¶ 3-9.) Having reviewed the exhibits, (Dkt. No. 188-7 – 188-11, Exs. 1-5), and as previously discussed, the Court concludes that the AEO designation is not warranted. Further, Exhibits 1, 2, 4, and 5 consist of a calendar invite and emails regarding meeting times; they do not contain confidential commercial information that requires sealing. Accordingly, the Court grants Defendants' motion in part: Exhibit 3, (Dkt. No. 188-9), shall be filed under seal and the other exhibits shall be filed on the public docket.

Finally, Plaintiff moves to file under seal seven exhibits submitted in support of its reply brief, including five exhibits Defendants designated as "Confidential." (Dkt. No. 201 (seeking to seal Dkt. Nos. 201-3 – 201-9).) Exhibit 1 is a calendar invite similar to the one the Court concludes does not contain confidential information, (*compare* Dkt. No. 188-7 *with* Dkt. No. 201-3); thus, sealing is not warranted. Likewise, Exhibit 2 does not warrant sealing because it is the same email submitted at Dkt. No. 188-8, which does not contain confidential information and merely discusses a potential meeting time, (*see* Dkt. Nos. 188-8 & Dkt. No. 201-4). Exhibit 4 is the same email discussing a potential meeting time submitted at Dkt. No. 188-10 and does not warrant sealing, (*see* Dkt. Nos. 188-10 & 201-6). Exhibit 5 is the same email submitted at Dkt. No. 188-11 that the Court concludes does not warrant sealing, (*see* Dkt. Nos. 188-11 & 201-7). Sealing is warranted, however, for Exhibits 3, 7, and 8, all of which contain confidential commercial information, (*see* Dkt. Nos. 201-5, 201-8, 201-9). Accordingly, the Court grants Plaintiff's motion in part: Exhibits 3, 7, and 8 shall be filed under seal and the other exhibits shall be filed on the public docket.

**CONCLUSION**

The Court's ruling is limited; specifically, Plaintiff's pre-litigation production of the documents subject to ongoing confidentiality restrictions does not take them outside the Protective Order. Whether there are specific documents that do not qualify for the Confidential or AEO

designation is not presently before the Court, except as the Court ruled above. Nonetheless, because it appears that Plaintiff made a wholesale designation of all the documents produced to Quantarium as AEO without an individual determination of whether such designation was warranted, Plaintiff must revisit its designation of those documents forthwith. Once that is done, if Defendants believe there are specific documents that do not satisfy the Confidential or AEO designation, they shall meet and confer with Plaintiff regarding those documents and then bring any unresolved disputes as to specific documents to the Court's attention pursuant to the Protective Order. The Court expects that no party will raise such a dispute unless a party in good faith believes it will actually use the document in this litigation.

Further, while no party argued to this Court that the documents Defendants produced to Plaintiff pre-litigation were disclosed pursuant to a confidentiality agreement, if that is indeed the case the Court expects that Plaintiff will treat those documents consistent with this Order rather than engage in litigation gamesmanship.

This Order disposes of Docket Nos. 179, 180, 188, and 201.

**IT IS SO ORDERED.**

Dated: August 12, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge